Argued 30 September; decided 14 October, 1901.

### UNITED STATES *v.* MCCANN.

[66 Pac. 274.]

REAL PARTY IN INTEREST—TRUSTEE AS PLAINTIFF.

1.  A person to whom a bond is executed conditioned to pay all expenses of performing a certain contract is a trustee of an express trust, within the meaning of Section 29, Hill's Ann. Laws, and is therefore the "real party in interest," as a plaintiff is required to be by Section 27 of Hill's Ann. Laws, and may sue on the bond in his own name, without joining the persons who will ultimately receive the benefit of any recovery: *Hexter* v. *Schneider*, 14 Or. 184, cited.

PROPRIETY OF OPINION EVIDENCE*—DAMAGES.

2.  Except where expert testimony is allowable, witnesses must state facts only, it being the province of a jury to draw its own conclusions; thus, in an action for damages, a witness should not be permitted to give his opinion as to the value of the injury suffered: *Burton* v. *Severance*, 22 Or. 91, followed.

PRESUMPTION OF INJURY FROM ERROR.

3.  Where error affirmatively appears, presumably, it was injurious, and the contrary must be shown to prevent reversal.

From Clatsop:    THOMAS A. MCBRIDE, Judge.

This is an action brought in the name of the United States, for the use and benefit of the Clatsop Mill Company, to recover a balance alleged to be due the mill company for lumber furnished to defendants Bulger & McCann, who, as contractors, did some work for the United States at the buoy

NOTE.—To the same effect, see *Chan Sing* v. *Portland,* 37 Or. 68.

—REPORTER.

depot near Astoria.    The action is upon a bond executed under and in pursuance of the act of congress approved August 13, 1894 (28 Stat. c. 280, p. 278), which provides that "any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied by him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties, and to prosecute the same to final judgment and execution; *provided,* that such action and its prosecution shall involve the United States in no expense."    The complaint alleges, in substance, that on the fifth day of September, 1894, the defendants Bulger & McCann entered into a contract with the United States to furnish all the labor and material necessary to do certain work in and about the buoy depot near Astoria, and at the same time, with the defendants Fisher and Fox as sureties, made, executed, and delivered to the plaintiff the bond upon which this action is based, conditioned, among other things, that they would "promptly make payments to all persons supplying them labor and materials in the prosecution of the work;" that between the thirteenth of October, 1894, and the fifth of January, 1895, the Clatsop Mill Company sold and delivered

lumber to Bulger & McCann of the reasonable value of $671.39 which was used in the performance of their contract, no part of which has been paid, except $350, leaving a balance of $321, for which judgment is demanded against the defendants for the use and benefit of the mill company.

The answer admits the execution of the bond and the furnishing of lumber to Bulger & McCann by the mill company, but, as an affirmative defense, avers, in substance, that, prior to entering into the contract with the United States, Bulger & McCann contracted with the mill company to furnish all the lumber necessary therefor on board a staunch and seaworthy scow at its lumber yard in the City of Astoria, as fast as it might be needed, and in time to enable them to complete the contract within two calendar months from September 15, 1894, and that the mill company failed to comply with its agreement, on account of which Bulger & McCann suffered damage, in this: (1) That it failed and neglected to deliver the materials within the time agreed upon, on account of which Bulger & McCann were delayed thirty-three days in the completion of the work, and compelled to and did forfeit to the United States $330; (2) that it did not deliver the materials on scows as agreed, and Bulger & McCann were compelled to and did pay a steamboat $78 for carrying a large portion of the lumber; (3) that it delivered a portion of the lumber on a rotten and unseaworthy scow, to the damage of Bulger & McCann in the sum of $25; and (4) that, by reason of the failure to deliver the lumber in time, Bulger & McCann were greatly hindered and delayed in the completion of the work, and required to employ a large number of extra men, which otherwise they would not have been compelled to do, and were obliged to and did raft and transport lumber by small boats from the mill company's yard to the works, and expend a large amount of time, and employ a large number of boats and laboring men, and otherwise expend large sums of money, aggregating the full sum of $500, in which sum they were further damaged. A reply was filed, putting in issue the new matter alleged in the answer, and the trial resulted in a

verdict and judgment in favor of the defendants, from which the plaintiff appeals, assigning error in the admission of testimony and in instructions to the jury.        Reversed.

For appellant there was a brief and an oral argument by *Messrs. John H.* and *Andrew M. Smith.*

For respondent there was a brief over the name of *Fulton Bros.,* with an oral argument by *Mr. Geo. Clyde Fulton.*

Mr. Chief Justice Bean, after stating the facts, delivered the opinion of the court.

1.   It is insisted by the defendants that the complaint does not state a cause of action, because it shows on its face that the United States has no interest in the subject-matter of the litigation, or in the amount sought to be recovered, and that the action should have been brought in the name of and by the Clatsop Mill Company, the real party in interest.   The statute provides that "every action shall be prosecuted in the name of the real party in interest," except that "an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted": Hill's Ann. Laws, §§ 27, 29.   And it is declared that "a person with whom, or in whose name a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section": Hill's Ann. Laws, § 29.   Now, the complaint, and the bond which is made a part of it, show on their face that the contract between the defendants and the United States was made for the benefit of "all persons supplying" Bulger & McCann with "labor and materials in the prosecution of the work," and therefore, under the statute, the United States is a trustee of an express trust, and an action on the bond may be maintained in its name, without joining with it the person for whose benefit the action is prosecuted.   Mr. Pomeroy says: "Various kinds of bonds and undertakings generally required by statute, and given to some designated

obligee, although showing on the face that they are designed to protect, secure, or indemnify other persons, are also contracts made 'with, or in the name of, one person for the benefit of another;' and although the party immediately interested may, in general, sue in his own name, yet the obligee or person to whom the promise is made may always, unless forbidden by statute, maintain the action, and in some states is the only one who is permitted to do so'': Pomeroy, Code Rem. (3 ed.) § 176. And Mr. Hawes says: "A person with whom or in whose name a contract is made for the benefit of another is a trustee of an express trust, and an action upon contract may be maintained in his name alone; but he is not compelled to bring the action. It may be maintained in the name of the *cestui que trust*'': Hawes, Parties, § 32.

The New York statute has precisely the same provisions upon this subject as ours. In *Stillwell* v. *Hurlbert*, 18 N. Y. 374, a deputy sheriff holding an execution took a bond running to his principal, conditioned to indemnify the latter and all persons assisting him in the premises, and it was held that an action would lie in the name of the sheriff for the benefit of the deputy, without any assignment of the cause of action by the latter. HARRIS, J., in speaking for the court, said: "In respect to the deputy who held the execution, and who in fact received the bond, the plaintiff became the trustee of an express trust. The obligation was executed to him for the benefit of his deputy. It is the precise case for which provision is made in the 113th section of the code." Again, in *Considerant* v. *Brisbane*, 22 N. Y. 389, it was held that the agent of a foreign corporation might maintain an action in his own name upon a subscription note payable to him "as executive agent of the company," although he had no personal interest in the note, on the ground that he was the trustee of an express trust, and as such entitled to bring the action. In *People* v. *Norton*, 9 N. Y. 176, it was held, before the code of that state was amended so as to include by its terms as a trustee of an express trust a person with whom or in whose

40 OR,—2.

name a contract is made for the benefit of another, that an action was properly brought in the name of the people on a bond given to the "People of the State of New York" for the benefit of those interested in a certain trust estate, the court ruling that the plaintiff was the trustee of an express trust, within the meaning of the statute authorizing an action to be brought by such a trustee in his own name, without joining the party for whose benefit it is prosecuted. See, also, *Hexter* v. *Schneider,* 14 Or. 184 (12 Pac. 668; *United States* v. *Henderlong,* (C. C.) 102 Fed. 2; *Weaver* v. *Trustees,* 28 Ind. 112. We are of the opinion, thertfore, that the action in this case was properly brought in the name of the United States, although it is probable that an action might have been maintained in the name of the mill company.

2. This brings us to the consideration of the assignments of error. The bill of exceptions shows that, after the plaintiff had given evidence tending to support the issue on its part, and rested, the defendant McCann offered himself as a witness, and testified that he and his partner, Bulger, entered into a contract with the United States to construct the public improvement mentioned in the complaint, and that the mill company agreed to furnish the lumber necessary therefor so as to enable them to complete the same within the time stipulated in their contract, but it had failed and neglected to do so; whereupon his counsel had propounded the following question to him: "I will ask you how much you were damaged by the failure of this mill company to deliver this lumber?" to which the plaintiff objected on the ground that it was incompetent, and called for the opinion of the witness. The court overruled the objection, and plaintiff's counsel excepted. The witness answered: "Well, I put my damages at $1,000." Thereupon he was asked by his counsel: "Not what you put it at, but what were your damages actually? A. I put it at that much. Q. How much? A. $1,000. Q. How much did the United States retain from you on account of the delay? A. $330. Q. I will ask you how much money it would have cost you, and you would have been required to have expended, in com-

pleting this work, had the lumber been delivered to you on time, so you would not have been delayed in waiting for it?'' Objection was made to this question on the ground that it was incompetent, and called for the opinion of the witness, which objection was overruled, and the witness answered, ''I estimated $1,150.'' ''Q. How much did it cost you on account of delays you suffered because lumber wasn't delivered on time?'' A similar objection was made and ruling had on this question, and the witness answered, ''About $600 extra.'' Counsel for the plaintiff not only objected to the admission of this testimony, but moved to strike it out; but the court overruled the motion, which ruling is also assigned as error.

It is an elementary rule of evidence that, except in cases where expert opinions or testimony is competent, a witness must state facts, and not draw conclusions from them, or give opinions. In actions of this character, therefore, while a witness may state the facts upon which the damage is predicated, he can not give his opinion concerning the amount of damages resulting from any given act, because it is the exclusive province of the jury to assess damages, under the rules of law declared by the court. This question arose in *Burton* v. *Severance*, 22 Or. 91 (29 Pac. 200), and that case is decisive here. It was an action to recover damages alleged to have been suffered by the plaintiff on account of the obstruction by the defendant to the navigation of a stream in Tillamook County. Upon the trial, the plaintiff was permitted, over defendant's objection and exception, to answer the question: ''How much were you damaged by reason of not being able to transport your hay by scows, and having to do it in the way you did?'' After an examination of the authorities, the ruling was held to be error; LORD, J., saying: ''It is clear the evidence was improperly admitted, for, as DARGAN, C. J., said: 'I have not been able to find any case that holds the opinions of witnesses as to the *quantum* of damages resulting from any act competent proof'; *Montgomery & W. P. R. Co.* v. *Varner*, 13 Ala. 185, 187.''

3. It is urged that in this case the error complained of was

harmless; but, where error is shown by the record, there is no presumption that it was rendered harmless or obviated during the trial, unless it so affirmatively appears: *Du Bois v. Perkins,* 21 Or. 189 (27 Pac. 1044).

The other assignments of error are based upon some remarks of the trial judge during the progress of the trial, and on one clause of the instructions which would seem to authorize the jury to take into consideration items of special damage without the same having been specified. But, as these questions may not arise on another trial, it is not necessary to consider them at this time.

Because of the admission of improper evidence, the judgment must be reversed, and a new trial ordered. REVERSED.