Argued and submitted March 10, certified question answered May 1, 2003

Stuart ABRAMS
and Abrams, Inc.,
*Plaintiffs,*

*v.*

GENERAL STAR INDEMNITY COMPANY,
*Defendant.*

(CV 99-00769-DCA; SC S49593)

67 P3d 931

Honorable Stephen Trott and Honorable T.G. Nelson, United States Circuit Court Judges; and Honorable John S. Rhoades, Senior United States District Court Judge.

Michael H. Bloom, of Bloom & Schuckman, P.C., Portland, argued the cause and filed the brief for plaintiffs.

Lisa E. Lear, of Bullivant Houser Bailey, P.C., Portland, argued the cause and filed the brief for defendant. With her on the brief were Douglas G. Houser and Margaret M. Van Valkenburg.

Thomas M. Christ, of Cosgrave Vergeer Kester, LLP, Portland, filed the brief for *amici curiae* Mutual of Enumclaw Insurance Company, Farmers Insurance Company, Safeco Insurance Company, and Liberty Northwest Insurance Company.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.

BALMER, J.

**BALMER, J.**

This court accepted certification of the following question of law from the United States Court of Appeals for the Ninth Circuit (Ninth Circuit):

"Does an insurer have a duty to defend an insured under an insurance policy with an 'intentional acts' exclusion if the complaint against the insured alleges a subjective intent to harm but the claim could be proven through unintentional conduct?"

*See* ORS 28.200 to 28.255 (describing certified question process); ORAP 12.20 (prescribing procedures for consideration of certified questions). We answer that question in the affirmative, for the reasons that follow.

We begin with the information that the Ninth Circuit provided about the underlying federal civil action. Southern Pacific Railway (Southern Pacific) possessed a number of rail van trailers that it leased to third parties on behalf of the owners of the trailers. An individual who worked for Southern Pacific, but who did not have authority to sell the trailers, sold some rail van trailers to Stuart Abrams and Abrams, Inc. (Abrams), the plaintiffs in this case, and kept the money. Abrams then sold many of the trailers to Beall Transport Equipment Company (Beall).

Once Southern Pacific discovered the theft of the trailers, it seized most of them from Beall. Beall then brought an action in state court against Southern Pacific, alleging conversion. Southern Pacific filed a third-party complaint against Abrams, alleging conversion. Abrams also brought an action in state court against Southern Pacific, alleging conversion, and Southern Pacific counterclaimed in that action for conversion. The two actions were consolidated for trial, and the trial court entered judgment against Abrams.[1]

---

[1] The Oregon Court of Appeals affirmed the trial court's judgment on appeal. *Beall Transport Equipment Co. v. Southern Pacific*, 170 Or App 336, 13 P3d 130 (2000). On review, this court affirmed in part and reversed in part the decision of the Court of Appeals, and remanded the case to that court for further proceedings. *Beall Transport Equipment Co. v. Southern Pacific*, 335 Or 130, 60 P3d 530 (2002).

At the time of the alleged conversion, Abrams was insured by General Star Indemnity Company (General Star). According to the Ninth Circuit, the insurance policy required General Star "to defend Abrams in any suit alleging property damage caused by Abrams" and "excluded coverage for any damage that the insured intended to cause." Abrams had tendered Southern Pacific's third-party complaint and counterclaim (the complaints) to General Star, but General Star had refused to defend. After General Star rejected Abrams's tender, Abrams brought an action in state court against General Star for failing to defend and indemnify. General Star removed the action to federal district court, invoking that court's diversity jurisdiction.

General Star moved for summary judgment, arguing that it did not have a duty to defend Abrams because the complaints alleged that Abrams had acted with the subjective intent to cause harm and, thus, Abrams's conduct fell under the intentional-acts exclusion of the insurance policy. *See, e.g.*, *Allstate Ins. Co. v. Stone*, 319 Or 275, 278, 876 P2d 313 (1994) (exclusion for intentionally caused injury applies when insured intended to cause not just event that resulted in injury, but injury or harm itself). The district court agreed and entered judgment in General Star's favor. Abrams appealed, and the Ninth Circuit reversed in an unpublished memorandum opinion. On General Star's petition for rehearing, the Ninth Circuit withdrew its memorandum disposition and certified the duty-to-defend question to this court.

In its order certifying the question, the Ninth Circuit stated that Southern Pacific's complaints against Abrams stated claims for conversion and that conversion was a covered claim under the General Star insurance policy. In addition, the Ninth Circuit noted that the factual allegations of the complaints also included allegations that Abrams had acted with the subjective intent to cause harm. We have reviewed the complaints against Abrams and the relevant provisions of the insurance policy, and agree with the Ninth Circuit's conclusions. As noted above, under this court's cases, an insurance policy with an intentional-acts exclusion does not provide coverage for acts done with the subjective intent to cause harm. Abrams argues that, because the complaints state claims for conversion, General Star has a duty

to defend, regardless of the allegations that, in committing the conversion, Abrams had acted intentionally. General Star responds that, because the complaints allege that Abrams had acted with the subjective intent to cause harm, General Star does not have a duty to defend.

■ Before answering the certified question, we address a threshold issue raised by *amici curiae*.[2] *Amici* argue that this court cannot answer the question as phrased because the question is so abstract that any answer that we offer will not be meaningful. The answer to any duty-to-defend question, they point out, depends on the specific wording of the insurance policy at issue. For that reason, they ask this court to rephrase the certified question to refer specifically to the wording of the duty-to-defend provision and to the "intended acts" exclusion of the General Star insurance policy.[3]

■ We agree with *amici* that whether a duty to defend exists in a particular case first depends on the specific wording of the specific insurance policy involved. As this court explained in *Marleau v. Truck Insurance Exchange*, 333 Or 82, 89, 37 P3d 148 (2001) (citing *Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80 (1994)), in answering a duty-to-defend question, "we must examine two documents: the insurance policy and [the] complaint." In certifying to this court the question set out at the beginning of this opinion, the Ninth Circuit stated its conclusions that the Southern Pacific complaints against Abrams stated claims that were covered by the policy that General Star had issued to Abrams and that the complaints also included allegations of intentional conduct that were excluded by that policy. Indeed, the Ninth Circuit's conclusion that the complaints against Abrams stated a claim for conduct that was covered by the General Star policy provided the foundation on which that court posed the legal question to this court regarding the duty to defend under

_____

[2] The *amici curiae*, who joined in one brief, are Mutual of Enumclaw Insurance Company, Farmers Insurance Company, Safeco Insurance Company, and Liberty Northwest Insurance Company.

[3] *Amici* are correct to point out that this court has the discretion to rephrase a question certified to it. *See Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 370-71, 811 P2d 627 (1991) (so stating). Rephrasing the certified question primarily is for the purpose of facilitating a resolution of the actual question of law posed by the case. *Id.* However, we perceive no reason to do so here.

Oregon law. As noted, our review of the specific complaints and the policy provisions leads us to the same conclusion. Understood in context, therefore, the certified question is sufficiently concrete to be answered: Given that the complaints state a claim for covered conduct, does the fact that the complaints also include allegations of excluded conduct defeat the duty to defend?

We begin, as the parties do, with this court's decision in *Marleau*. In that case, the insurance policy covered "personal injury liability" and imposed on the insurer the duty to defend any action against the insured seeking damages for personal injury. The personal injury coverage included coverage for defamation, libel, and invasion of privacy, but excluded coverage for "personal injury * * * arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." 333 Or at 86. When a third party brought an action against the insured, alleging, among other claims, intentional infliction of emotional distress based on statements made by the insured, the insured tendered defense of the action to the insurer. One year after the tender, the insurer accepted the defense under a reservation of right to deny coverage. After settling the personal injury action, the insured brought an action against the insurer to recover costs associated with the first year of the litigation.

On review, the insured made the same argument that Abrams makes in this case, namely, that an insurer has a duty to defend if the allegations in the complaint, without amendment, state facts sufficient to constitute a claim for conduct that the policy covers, even if the complaint does not state those facts separately from facts that constitute a claim for excluded conduct. The insurer accepted that proposition but argued that, if the complaint required *any* amendment, even an amendment as to form, then the complaint did not, "without amendment," impose liability for a covered offense and no duty to defend existed. This court rejected the insurer's argument, emphasizing that a complaint need not plead a claim in perfect form to provide notice to the insurer and that that notice to the insurer provided the rationale undergirding the "without amendment" standard. *Id.* at 90-91. This court explained that an insurer has a duty to defend

if allegations in a complaint, even if identified as a single claim for relief, in fact state more than one claim for relief, at least one of which is for conduct covered by the policy.[4] *Id.* at 91.

Despite this court's explanation in *Marleau* that an insurer has a duty to defend if the complaint against the insured states a claim for covered conduct, General Star argues that it nevertheless has no duty to defend in this case because the complaint, although stating a claim for conversion, includes allegations that Abrams had converted the property with the intent to cause harm to Southern Pacific. As authority for that argument, General Star relies on the following passage from this court's opinion in *Ledford*:

> "Because the complaint alleged only that [the insured] subjectively intended to harm or injure [the plaintiff], it is irrelevant whether or not a claim for malicious prosecution could, in theory, be sustained where the [insured] did not have a subjective intent to cause harm * * *. The * * * complaint alleged only conduct that clearly falls outside the coverage of the policy. Therefore, [the insurer] had no duty to defend the malicious prosecution action."

319 Or at 402-03. Although that passage, standing alone, appears to provide support for General Star's argument, it does not lend the same support when read in the context of the complaint that was then before the court, as explained below.

The insured in *Ledford* had been sued for malicious prosecution. The complaint specifically alleged that the insured "willfully and maliciously" had instituted a prosecution with the intent to "harass, annoy, harm and cause expense to" the plaintiff in that action. The insurer had refused the tender of the defense, citing the insurance policy's intended-acts exclusion. 319 Or at 401. After settling the malicious prosecution action, the insured brought an action against his insurer for defense costs and indemnity. This court affirmed the trial court's summary judgment in favor of the insurer, relying on *Ferguson v. Birmingham Fire Ins.*,

---

[4] In *Marleau*, however, this court concluded that the insurer did not have a duty to defend because the complaint did not state a claim for any covered claim. 333 Or at 96.

254 Or 496, 460 P2d 342 (1969). In *Ferguson*, this court held that the insurer had the duty to defend the insured against a complaint of *willful* trespass because the plaintiff could have recovered for "innocent trespass" without amending the complaint. 254 Or at 507. The court in *Ferguson* used the analogy to criminal law and explained that, in such circumstances, the insurer has a duty to defend because the allegations of intentional conduct contain a "lesser included" tort that is covered under the insurance policy. In *Ledford*, this court applied the *Ferguson* standard and concluded that the complaint then before it, unlike the complaint in *Ferguson*, would not, without amendment, have permitted proof of any covered offense. Accordingly, the court concluded that the insurer did not have a duty to defend. *Ledford*, 319 Or at 403.

That is the context in which this court offered the statement, set out above, on which General Star relies here. Therefore, read in conjunction with this court's holding in *Ferguson*, the court's statement in *Ledford* that there is no duty to defend if the complaint "alleges only that [the insured] subjectively intended to cause harm" does not mean that the inclusion of such allegations always defeats the duty to defend. Instead, it means that, when the allegations in the complaint state a claim for excluded conduct only, as was true of the complaint for malicious prosecution then before the court, there is no duty to defend. Indeed, *Ledford* made that distinction clear at a later point in the opinion:

> "The subjective intent of the defendant is an element of malicious prosecution. That is not the case with respect to some other intentional torts * * * as to which this court has concluded that the inference of an intent to cause harm does not apply. Those other intentional torts have 'lesser included torts,' such as negligence, under which liability may be imposed for similar conduct without any subjective intent to cause harm."

319 Or at 405.

■■ Read together, therefore, *Ferguson* and *Ledford* suggest the following approach for answering any duty-to-defend question when the complaint contains allegations of conduct that are excluded under the insurance policy. First, the court must determine whether the complaint contains allegations

of *covered* conduct. If it does, as the trespass complaint did in *Ferguson*, then the insurer has a duty to defend, even if the complaint also includes allegations of excluded conduct. If the complaint does not contain allegations of covered conduct, as was the case with the malicious prosecution complaint before the court in *Ledford*, then the insurer has no duty to defend. Accordingly, in this case, because the allegations of intentional conversion include allegations of ordinary conversion, a tortious act that is covered under the policy, General Star had a duty to defend.

Although we have answered the certified question, we offer the following additional clarification in response to another argument that *amici* make in this case. They argue that the rule of *Ferguson* is at odds with a long line of authorities from this court. They contend that that line of authority, which includes *Isenhart v. General Casualty Co.*, 233 Or 49, 377 P2d 26 (1962), *McKee v. Allstate Ins. Co.*, 246 Or 517, 426 P2d 456 (1967), and *City of Burns v. Northwestern Mutual*, 248 Or 364, 434 P2d 465 (1967), stands for the proposition that an insurer has no duty to defend under a policy with an intentional-acts provision if the complaint against the insured alleges intentional conduct, regardless of whether the complaint also states a claim for covered conduct. In the context of that line of authority, they argue, this court must interpret *Ferguson*'s "without amendment" standard strictly to require that, if the complaint must be amended *in any way*—for example, to state separately an alternative allegation of unintentional conduct and an allegation of intentional conduct—then there is no duty to defend. For the reasons that follow, we disagree.

■ First, this court specifically rejected that strict interpretation of the "without amendment" standard in *Marleau*, as described above. As this court noted in that case, "neither the failure to identify correctly the claims nor the failure to state them separately defeats the duty to defend." 333 Or at 91. Second, *Isenhart* and *McKee* are inapposite to this discussion, because the complaints at issue in those cases did not state claims for covered conduct or claims that would support both covered and excluded conduct; rather, they stated claims for excluded conduct only. *Isenhart*, 233 Or at 54; *see also Ferguson*, 254 Or at 508 (distinguishing complaint in

*Isenhart*, because that complaint, unless amended, would not have permitted recovery for unintended injury);[5] *McKee*, 246 Or at 518-19. In other words, in those cases, this court was not presented with the problem of a complaint that, despite allegations of excluded conduct, also stated a claim for conduct covered under the insurance policy.

Finally, although *amici* correctly note that this court's holding in *City of Burns* is contrary to the duty-to-defend analysis offered here, this court, in *Ferguson*, explicitly disavowed *City of Burns*. The complaint at issue in *City of Burns* included a punitive damages provision alleging that the insured had acted "willfully, wantonly, and maliciously" when it moved the plaintiff's husband's body from one grave to another. This court held that the insurer did not have a duty to defend because the complaint alleged that the insured acted with the intent to cause the plaintiff harm, and intentional acts were excluded from coverage. 248 Or at 371. However, in *Ferguson*, this court stated that its conclusion in *City of Burns*

"was erroneous because the complaint, although alleging a malicious injury would, without amendment, permit a recovery for an unintended injury since it could be analogized to a 'lesser included offense.' Since the unintended injury fell within the policy coverage the insurer on that issue had a duty to defend."

*Ferguson*, 254 Or at 508. For the foregoing reasons, we reject the argument of *amici curiae*.

Certified question answered.

---

[5] It is not clear that this court today would reach the conclusion that it did in *Isenhart* that the complaint at issue there did not state a claim for unintentional conduct.

The complaint at issue in that case was one for assault and battery, and that intentional tort often includes the "lesser," unintentional offense of battery. *See, e.g., Snyder v. Nelson/Leatherby Ins.*, 278 Or 409, 415-16, 564 P2d 681 (1977) (complaint for assault and battery permits inference of unintentional conduct). However, in *Isenhart*, whether the complaint included a lesser, covered offense was not the issue. In that case, the parties appear to have agreed that the complaint alleged only intentional conduct. *Isenhart*, 233 Or at 54.